UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **COUNTRY CLUB OF FAIRFIELD, INC.,** | : | **CIVIL ACTION NO.** |
| Plaintiff, | : | **3:13-CV-00509 (VLB)** |
| | : | |
| v. | : | |
| | : | |
| **NEW HAMPSHIRE INSURANCE COMPANY,** | : | |
| Defendant. | : | **August 8, 2014** |

**MEMORANDUM OF DECISION DENYING DEFENDANT'S MOTION TO STAY DISCOVERY AND BIFURCATE CLAIMS [Dkt. 21], AND GRANTING PLAINTIFF'S MOTION TO COMPEL [Dkt. 37]**

I.   **Introduction**

The Plaintiff, Country Club of Fairfield, Inc. (the "Club"), has brought this insurance coverage action against Defendant New Hampshire Insurance Company ("New Hampshire"), alleging breach of contract and breach of the implied covenant of good faith and fair dealing stemming from the Defendant's alleged failure to compensate the Plaintiff for damage sustained as a result of Tropical Storm Irene.  Currently pending before the Court is New Hampshire's Motion to Stay Discovery pursuant to Federal Rule of Civil Procedure 26(c) as to the Club's claim for breach of the implied covenant of good faith and fair dealing, and its request to bifurcate the two claims in this action pursuant to Federal Rule 42.  For the reasons that follow, the Defendant's Motion is DENIED.

II.   **Factual Background**

The following facts and allegations are taken from Plaintiff's complaint.

1

The Club is a full-service golf course and country club located in Fairfield, Connecticut and bordered on three sides by Long Island Sound and by a seawall. [Dkt. 1, Compl. ¶6]. New Hampshire issued a commercial property insurance policy to the Club with a limit of $10,304,070 and an effective period of June 13, 2011 to June 13, 2012. [*Id.* at ¶7]. The "Premier Property Coverages" section of the policy requires New Hampshire to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." [*Id.* at ¶8]. Covered Property includes "retaining walls" and "golf holes." [*Id.* at ¶9]. The policy defines "Covered Causes of Loss" as "RISKS OF DIRECT PHYSICAL LOSS" unless the loss is excluded or limited by the terms of the Policy. [*Id.* at ¶10].

The policy contains a Business Income (Extra Expense) Coverage Form, which states that New Hampshire will pay for "the actual loss of Business Income you [ ] sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'" Suspension "must be caused by direct physical loss or damage to the property at premises which are described in the Declarations" and "[t]he loss or damage must be caused by or result from a Covered Cause of Loss." [*Id.* at ¶11]. Business Income is defined as "a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and b. Continuing normal operating expenses incurred, including payroll." [*Id.* at ¶12]. The policy also includes a Windstorm or Hail Deductible Endorsement, which "modifies insurance provided under the … Country Club Premier Property Coverage Form [and the] Business Income (and Extra Expense) Coverage Form"

2

and "applies to loss or damage to Covered Property caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage."  [*Id.* at ¶13].

On or about August 28, 2011 Tropical Storm Irene caused documented high wind speeds in the Fairfield, Connecticut area of more than sixty miles per hour and caused extensive damage to the Club's property. [*Id.* at ¶14].  The excessive wind speeds caused Long Island Sound's waters to breach the seawall and spill onto the golf course, and caused significant damage to the golf holes. [*Id.*].  Due to the physical damage to the golf holes, the Club was forced to cancel golf tournaments scheduled from September 2011 through the remainder of the year, resulting in significant loss of revenue.  [*Id.* at ¶15].  The Club notified New Hampshire of the damage to the golf holes and related loss of business income and demanded coverage.  [*Id.* at ¶16].  New Hampshire thereafter made a partial payment to the Club as "coverage for the flood damage to the [seawall]," applying a higher deductible and denying and disclaiming any obligation to pay for the physical damage to the golf holes and any related business income losses.  [*Id.* at ¶17].

The Club alleges breach of contract in its first count for New Hampshire's failure to provide coverage under the policy and breach of the implied covenant of good faith and fair dealing in its second count.  As to count two, the Club alleges that New Hampshire "act[ed] in its own self-interest and with reckless indifference to the rights of its insured" in the following ways: (1) by failing to conduct a reasonable and adequate investigation regarding the cause of the

3

**Club's loss and damage, including deliberately ignoring factual information demonstrating windstorm as the preceding or concurrent cause and summarily deciding, in the face of overwhelming evidence to the contrary, that the damage to the golf holes was due to flood in order to avoid coverage; (2) by deliberately and unreasonably ignoring substantial and relevant terms in the Windstorm or Hail Deductible Endorsement of the policy and/or deliberately misinterpreting these terms contrary to a reasonable lay person's interpretation in order to avoid providing full coverage; (3) by acting with reckless indifference to the Club's interests by intentionally misleading the Club to believe that there is no coverage for the majority of its claim based on a standard-form water exclusion while knowing that this exclusion was modified and/or abrogated by endorsements added to the policy; (4) by intentionally misleading the Club to believe that coverage for business income loss is conditioned upon coverage for property damage to golf holes in order to avoid providing coverage for business income loss while knowing that the Club is entitled to such coverage; (5) by neglecting and/or refusing to provide the coverage afforded to the Club through endorsements added to the policy despite collecting and retaining premiums for said endorsements; and (6) by denying coverage knowing that the Club would be forced to bring suit to obtain the coverage to which it is legally entitled.  [*Id.* at ¶28].  The Club alleges that New Hampshire's conduct was designed to mislead and/or deceive the Club, and was not prompted by negligence or an honest mistake as to New Hampshire's rights and obligations under the policy.  [*Id.* at ¶29].**

4

New Hampshire contends that it has made all payments due under the policy and that the Club is entitled to no further coverage or payment. [Dkt. 16, Answer, Defenses, Counterclaim]. New Hampshire has also filed a counterclaim for declaratory judgment seeking a declaration as to its obligations under the policy. [*Id.*].

III.  **Legal Standards**

  a.  **Stay of Discovery**

Federal Rule of Civil Procedure 26(c) allows a court, for "good cause" and in favor of "any person from whom discovery is sought," to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "[U]pon a showing of good cause a district court has considerable discretion to stay discovery" pursuant to Rule 26(c). *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (quoting *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009)). *See also United Rentals, Inc. v. Chamberlain*, 3:12-CV-1466 CSH, 2013 WL 6230094, *3 (D. Conn. Dec. 2, 2013) ("[T]he decision whether to issue a stay is 'firmly within a district court's discretion.'") (citing *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005)). The party seeking the stay bears the burden of demonstrating good cause for the stay. *United Rentals, Inc.*, 2013 WL 6230094 at *3.

The filing of a dispositive motion does not automatically constitute good cause for a stay of discovery. *See, e.g., United Rentals, Inc.*, 2013 WL 6230094 at

5

\*3; *Alford v. City of New York*, CV 2011-0622 ERK MDG, 2012 WL 947498 (E.D.N.Y. Mar. 20, 2012). Rather, "a court determining whether to grant a stay of discovery pending a motion must look to the particular circumstances and posture of each case." *Hong Leong Fin. Ltd. (Singapore)*, 297 F.R.D. at 72 (quoting *Alford*, 2012 WL 947498, \*1); *see also ITT Corp. v. Travelers Cas. & Sur. Co.*, 3:12CV38 RNC, 2012 WL 2944357, \*2 (D. Conn. July 18, 2012) (same). Courts should consider multiple factors, including the breadth of discovery sought, the burden of responding to it, the prejudice that would result to the party opposing the stay, and the strength of the pending motion forming the basis of the request for stay. *See ITT Corp.*, 2012 WL 2944357, \*2; *Cuartero v. U.S.*, 3:05CV1161 RNC, 2006 WL 3190521, \*1 (D. Conn. Nov. 1, 2006); *Hong Leong Fin. Ltd.*, 297 F.R.D. at 72. A discovery stay may be appropriate pending resolution of a potentially dispositive motion where the motion articulates substantial grounds for dismissal. *See, e.g., ITT Corp.*, 2012 WL 2944357, at \*2 (discovery stay is appropriate where the pending dispositive motion "appear[s] to have substantial grounds or, stated another way, do[es] not appear to be without foundation in law.") (quoting *Johnson v. N.Y. Univ. School of Educ.,* 205 F.R.D. 433, 434 (S.D.N.Y. 2002)); *United Rentals, Inc.*, 2013 WL 6230094 (quoting same); *Hong Leong Fin. Ltd.*, 297 F.R.D. at 72-73 ("a motion for a stay [must] be supported by 'substantial arguments for dismissal,' or—in what we view as an equivalent formulation—that there has been 'a strong showing that the plaintiff's claim is unmeritorious.'") (citations omitted).

      b. <u>Bifurcation of Claims</u>

**Federal Rule of Civil Procedure 42 provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). Bifurcation is within the district court's discretion and is decided on a case-by-case basis.** *Svege v. Mercedes-Benz Credit Corp.*, **329 F. Supp. 2d 283, 284 (D. Conn. 2004);** *Doe No. 1 v. Knights of Columbus*, **930 F. Supp. 2d 337, 379 (D. Conn. 2013). It is, however, the exception and not the rule, and the moving party bears the burden of establishing that bifurcation is warranted.** *Computer Associates Int'l, Inc. v. Simple.com, Inc.*, **247 F.R.D. 63, 67 (E.D.N.Y. 2007);** *Svege*, **329 F. Supp. 2d at 284. See also** *Kos Pharm., Inc. v. Barr Labs., Inc.*, **218 F.R.D. 387, 391 (S.D.N.Y. 2003) ("The inconveniences, inefficiencies and harms inherent in these probable consequences [of bifurcation] -to the parties and third parties, to the courts, and to the prompt administration of justice-weigh against separation of trials and suggest that, for those probable adverse effects to be overcome, the circumstances justifying bifurcation should be particularly compelling and prevail only in exceptional cases").**

**When considering whether to bifurcate, courts "should examine, among other factors, whether bifurcation is needed to avoid or minimize prejudice, whether it will produce economies in the trial of the matter, and whether bifurcation will lessen or eliminate the likelihood of juror confusion."** *Svege*, **329 F. Supp. 2d at 284;** *Knights of Columbus*, **930 F. Supp. 2d at 379 (citing same).**

7

Bifurcation also "may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue, or where one party will be prejudiced by evidence presented against another party." *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999) (citations omitted). Other factors to consider include whether the issues are significantly different from one another, whether the case is to be tried before a jury or to the court, whether the posture of discovery favors a single trial or bifurcation, and whether the evidentiary issues overlap. *Knights of Columbus*, 930 F. Supp. 2d at 379. *See also Computer Associates Int'l, Inc.*, 247 F.R.D. at 67 ("To determine whether bifurcation is warranted, courts generally consider the following three factors: 1) whether significant resources would be saved by bifurcation, 2) whether bifurcation will increase juror comprehension, and 3) whether bifurcation will lead to repeat presentations of the same evidence and witnesses.") (citation omitted).

### IV. Discussion

New Hampshire asserts that, in the interest of judicial economy and to prevent prejudice to the Defendant, it is appropriate to stay discovery as to count two pursuant to Rule 26(c) and (d) until after the parties file dispositive motions and the Court issues a determination as to New Hampshire's coverage obligations under the policy as related to count one, and that the Court should accordingly bifurcate counts one and two pursuant to Rule 42. The Defendant contends that, as the determination of coverage under an insurance policy presents a question of law for the Court, the Club's first count for breach of the insurance policy is likely to be determined by a dispositive motion. The

**Defendant further contends that because the Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is based on its claim that New Hampshire denied insurance coverage as alleged in count one, *i.e.*, a substantive rather than a procedural bad faith claim, a determination as to count one for breach of the insurance policy may eliminate the need for a determination of the bad faith claim.  In other words, according to the Defendant, if no additional insurance coverage is owed to the Club under the policy, the Plaintiff's claim for breach of the implied covenant of good faith and fair dealing will fail because it is a substantive bad faith claim rather than a procedural bad faith claim under Connecticut law.  New Hampshire also asserts that granting its motion will "eliminate the potential for prejudice" to the Defendant in that staying discovery as to count two will prevent New Hampshire's "entire claims file and other confidential information" from being the subject of discovery, as the scope of discovery is broader in a claim for breach of the implied covenant of good faith and fair dealing than in a claim for breach of the insurance contract.  [Dkt. 21, p.4].**

The Club counters that resolution of New Hampshire's coverage obligations under the policy will not dispose of the Club's claim for breach of the implied covenant of good faith and fair dealing as its claim includes procedural bad faith, and that counts one and two are intertwined such that bifurcating the trials on these claims would grossly inconvenience the Court and the Club.  The Club also contends that the discovery relating to both claims substantially overlaps and that the discovery of information in New Hampshire's claims file is

9

relevant to both counts in this action.  Consequently, the Plaintiff argues that staying discovery and bifurcating its claims would be inefficient, would not negate any prejudice to the Defendant, and would be prejudicial to the Club.

The Court concludes that a stay of discovery pending the filing and adjudication of a dispositive motion is inappropriate in this case.  First, although New Hampshire argues that a stay is appropriate because a future dispositive motion will determine whether it owes further coverage to the Club under count one and, if the Court determines that no further coverage is owed, will make count two moot, New Hampshire has not yet filed a dispositive motion or articulated its position such that the Court could evaluate the relative strengths or weaknesses of its argument that the Club is entitled to no further coverage.  Rather, New Hampshire has simply stated that it owes no further coverage to the Club without supporting its contention legally or factually, contending only that "if [Plaintiff] does not prevail on its breach of contract claim it will not prevail on its claim for breach of the implied covenant of good faith and fair dealing." [Dkt. 26, D's Reply p.5].  While it may be theoretically advantageous to bifurcate discovery, New Hampshire provides no concrete grounds – much less substantial grounds – for this Court to conclude that it will prevail on count one, consequently mooting count two.  It is therefore entirely probable that New Hampshire will *not* prevail on count one and that, after disposition of the yet-unfiled motion, counts one and two will remain extant and no discovery will have been conducted as to count two.  It is thus not possible at this juncture for the Court to conclude that substantial grounds for dismissal of Plaintiff's claim for

breach of the insurance policy exist such that staying discovery as to count two until the filing and resolution of a dispositive motion would be appropriate in this case.

Although it is unnecessary to do so in light of New Hampshire's failure to demonstrate that it has significant grounds for dismissal of count one, thereby negating count two, the Court briefly addresses New Hampshire's argument that the Club's good faith and fair dealing claim must fail because it alleges only substantive and not procedural bad faith.  New Hampshire contends that the Club's bad faith claim is premised on New Hampshire's denial of coverage only, and that the failure to pay a claim is insufficient on its own to establish bad faith. *See United Tech. Corp. v. Am. Home Assur. Co.*, 989 F. Supp. 128, 156 (D. Conn. 1997) ("The mere failure to pay a claim is not sufficient to establish bad faith"). The Plaintiff counters that a ruling on count one will not resolve count two because the Club has alleged a procedural bad faith claim that does not depend on the existence of coverage under the policy.  [Dkt. 23, P's Opp. p.4].

General principles of bad faith under Connecticut law are well-settled.

> [I]t is axiomatic that the ... duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship.... In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.... The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term.

11

*Renaissance Mgmt. Co., Inc. v. Conn. Hous. Fin. Auth.*, 281 Conn. 227, 240 (Conn. 2007) (quoting *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432–33 (Conn. 2004)). "To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *Id.*; *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 795 (Conn. 2013) (same). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.... Bad faith means more than mere negligence; it involves a dishonest purpose." *De La Concha*, 269 Conn. at 433; *Capstone Bldg. Corp.*, 308 Conn. at 795 (same); *TD Bank, N.A. v. J & M Holdings, LLC*, 143 Conn. App. 340, 348 (Conn. App. Ct. 2013) (same).

Bad faith is not implicated by conduct that does not impair contractual rights. *Home Ins. Co. v. Aetna Life & Cas. Co.,* 235 Conn. 185, 200 (Conn. 1995) (quoting *Habetz v. Condon,* 224 Conn. 231, 238 (Conn. 1992)). Rather, "a bad faith action must allege denial of the receipt of an express benefit under the [insurance] policy." *Capstone Bldg. Corp.*, 308 Conn. at 794. "A bad faith cause of action not tied to duties under the insurance policy must therefore fail as a matter of law." *Id.* at 797.

In arguing that its bad faith claim would still be cognizable as a procedural bad faith claim even if the Court concluded that no further coverage is due to the

12

Club under the policy, the Club relies on the District of Connecticut's holding in *United Tech. Corp. v. Am. Home Assur. Co.*, 118 F. Supp. 2d 181 (D. Conn. 2000). In that case, the Court (Arterton, J.) concluded that the Connecticut Supreme Court "would not limit the tort of bad faith in the property insurance context to claims of unreasonable or wrongful denial of claims" as an insurer's "duty of good faith is not triggered only when coverage is unquestioned." 118 F. Supp. 2d at 188. Thus, as "[t]he core of the duty of good faith and fair dealing is that the insurer act reasonably towards its insured," procedural bad faith claims may be cognizable even absent a denial of coverage. *Id.* (quoting *Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 508 (Ariz. 1992)). The Court accordingly concluded that, where the insurer had taken an unequivocal "no coverage position" as to the insured's property damage claim for contamination of soil, effectively delaying the determination of the insured's claim while "misleading or deceiving the plaintiff insured into believing that productive steps towards claims resolution were underway," judgment in favor of the plaintiff was proper. *Id.* at 184, 188 ("it makes little sense to hold insurers accountable for their bad faith actions in wrongfully denying claims, yet immunize them from liability if they simply refuse to issue the denials that can prompt coverage-testing litigation"). Other courts in Connecticut have relied upon *United Tech. Corp.* in holding that a procedural bad faith claim does not depend on the existence of coverage under a policy. *See, e.g., Tucker v. Am. Int'l Grp., Inc.*, 3:09-CV-1499 CSH, 2011 WL 6020851 (D. Conn. Dec. 2, 2011) (Haight, J.) ("A claim of procedural bad faith … is predicated on the bad faith *handling process* of the claim, regardless of whether

13

coverage exists. . . . Connecticut courts have not negated the existence of an independent tort for procedural bad faith in the absence of coverage."); *Fortin v. Hartford Underwriters Ins. Co.*, X04CV030103483S, 2006 WL 3524562, *2 (Conn. Super. Ct. Nov. 20, 2006) (noting *United Techs. Corp.*'s differentiation of "substantive and procedural claims of the breach of the obligations of good faith and fair dealing concerning insurance contracts and a company's claims resolution procedures" and rejecting insurer's argument that bad faith tort is only available where the insurer has breached its contract). *See also United Techs. Corp.*, 118 F. Supp. 2d at 188–89 (collecting cases from other jurisdictions).

The Connecticut Supreme Court has not opined specifically on whether claims handling misconduct not involving wrongful withholding of payment due under an insurance policy may constitute bad faith. However, it is unclear to this Court whether such a claim may be maintained in light of the Connecticut Supreme Court's decision in *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 794, 797-98, 801 (2013) ("a bad faith action must allege denial of the receipt of an express benefit under the [insurance] policy" and "[a] bad faith cause of action not tied to duties under the insurance policy must therefore fail as a matter of law." Also holding that "in the absence of a breach of an express duty under the insurance policy, there is no independent cause of action for deficiencies in the insurer's investigation" but, "when accompanied by other evidence, reflecting an improper motive, properly *may* be considered as evidence

14

of bad faith.").[1]  Nor have other courts reached the same conclusion as the *United Tech. Corp. v. Am. Home Assur. Co.* court.  See, e.g., *McCulloch v. Hartford Life & Acc. Ins. Co.*, 363 F. Supp. 2d 169, 177 (D. Conn. 2005) ("[a]llegations of a mere coverage dispute or a negligent investigation by an insurer will not state a claim for bad faith.  Thus, a plaintiff cannot recover for bad faith if the insurer denies a claim that is 'fairly debatable,' i.e., if the insurer had some arguably justifiable reason for refusing to pay or terminating the claim."); *Harris v. Hermitage Ins. Co.*, CV085021329S, 2009 WL 3740666, *8 (Conn. Super. Ct. Oct. 13, 2009) (holding that where policy did not require insurance company to defend or indemnify the insured, "the failure to do so could not constitute a breach of the covenant of good faith and fair dealing").

While New Hampshire apparently agrees that procedural bad faith claims remain cognizable under Connecticut law pursuant to the holding in *United Tech. Corp. v. Am. Home Assur. Co.* even in the absence of an explicit denial of coverage, it argues that the Plaintiff has failed to sufficiently plead bad faith and that the allegations here do not rise to the level of those in *United Tech. Corp.*.  However, this issue is a matter for a substantive motion and not appropriate for review based only on the sparse briefing of the parties.  Moreover, neither party

---

[1] This Court, (Arterton, J.), has previously held, based on holding of *United Techs. Corp.*, that procedural bad faith could include the failure to reasonably investigate.  *Royal Ins. Co. of Am. v. Zygo Corp.*, 349 F. Supp. 2d 295, 313 (D. Conn. 2004) ("While the Connecticut Supreme Court has never squarely addressed the issue, this Court has held … that Connecticut common law would recognize a claim for 'procedural bad faith,' including failure to reasonably investigate an insurance claim").

asserts that the Plaintiff would be precluded from amending its complaint to buttress its claim for breach of the implied duty of good faith either now or if its claim were dismissed on New Hampshire's yet-to-be filed motion to dismiss. Consequently, staying discovery at this juncture would be inappropriate if based on the brief arguments of the parties presented here as to procedural bad faith.[2]

The Defendant has also failed to demonstrate *either* that discovery as to count two would be time-consuming, burdensome, or expensive, *or* how the scope of discovery required as to count two would be substantially broader than the discovery required as to count one.  The Court notes that the Defendant has not articulated what discovery requests it has yet received such that this Court could determine whether the breadth of discovery sought weighs in favor of Defendant's request to stay.  Indeed, discovery regarding the insurance coverage issue will likely overlap with the discovery necessary for the bad faith claim.  New Hampshire's employees may possess relevant information as to both claims, *i.e.*, the scope of coverage under the policy and the steps that were taken or not taken in determining coverage for Plaintiff's claims.  The goal of judicial economy and efficiency is furthered by deposing these witnesses once, and the benefit to both parties and their witnesses of not duplicating discovery outweighs New Hampshire's arguments for a discovery stay or bifurcation of claims.

---

[2] The Court notes that nearly the entirety of Defendant's argument that the Plaintiff has failed to plead a procedural bad faith claim appears in its Reply to the Plaintiff's Opposition to New Hampshire's Motion to Stay, and not in the Motion to Stay itself.  Aside from the dubious propriety of making these arguments almost solely in a reply brief, the parties simply have not briefed this issue sufficiently at this juncture.

16

**Nor has New Hampshire sufficiently demonstrated that it will be prejudiced if discovery as to its alleged bad faith claim is allowed to proceed. Rather, New Hampshire merely asserts that prejudice "may result from a broadened scope of discovery" necessary to the bad faith claim, including discovery of its entire claims file, which claim Defendant contends does not exist in this case in the first instance absent coverage. [Dkt. 21, p.4; dkt. 26, pp.5-6]. The Plaintiff responds that the significant prejudice and expense it would incur if its witnesses were deposed twice negates any prejudice to the Defendant of proceeding with discovery. However, as discussed, this Court need not reach the issue of whether the Plaintiff's bad faith claim would be cognizable if additional coverage is not due under the policy, both because New Hampshire has not provided significant grounds for dismissal of Plaintiff's breach of contract claim and because the parties have not sufficiently addressed the issue of whether a procedural bad faith claim is cognizable under Connecticut law at this stage. Rule 26 entitles the parties to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense" and "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Moreover, as the Defendant explicitly recognizes, a claim of bad faith may entitle the Plaintiff to discovery of New Hampshire's entire claims file. *See, e.g., O'Leary Ltd. P'ship v. Travelers Prop. Cas. Co.*, X04CV990121281S, 2001 WL 417698 (Conn. Super. Ct. Apr. 5, 2001) (granting motion to compel production of insurance claim where bad faith claim was alleged and noting that "other courts in Connecticut have**

17

required production of insurance claims files when bad faith allegations have been pleaded against the insurers"). Limiting the scope of discovery based on the entirely speculative assertion of prejudice to the Defendant is inappropriate at this juncture.

V. Conclusion

For the foregoing reasons, the Court finds that the Defendant has failed to satisfy its burden to establish that either a stay of discovery or bifurcation of claims is warranted. The issue of bifurcation may be revisited, if the parties desire, after discovery has progressed and this case is closer to its trial date. New Hampshire's [Dkt. 21] Motion to Stay Discovery and Bifurcate Claims is DENIED.

Finally, as stated above the filing or a motion, even a dispositive motion which might obviate the need to conduct any discovery altogether, is ordinarily not a basis to stay or refuse to produce discovery absent extraordinary circumstances. A party objecting to discovery must lodge their objection in accordance with the rules pertaining to discovery, including supporting it with applicable law and in the case of an assertion of privilege a rule-conforming privilege log. Such a log must describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim. Fed. R. Civ. P. 26(b)(5). The Plaintiff has moved to compel the disclosure and production of discovery which the

18

**Defendant has withheld due to the pendency of the instant motion and for other reasons not sufficiently supported legally or factually to enable the Court to assess their merits. Accordingly, the Plaintiff's motion to compel [Dkt. No. 37] is granted effective August 29, 2014 and on that day the Defendant is ordered to disclose the information sought unless and to the extent that prior to August 22, 2014 the Defendant has served on the Plaintiff an objection with supporting legal authority and privilege log, as appropriate to any discovery not satisfied.**

                **IT IS SO ORDERED.**

                _____/s/_____
                **Hon. Vanessa L. Bryant**
                **United States District Judge**

**Dated at Hartford, Connecticut: August 8, 2014**